UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 13-CR-7 (MJD/LIB) |
| v. | **REPORT AND RECOMMENDATION** |
| Gordon Dean Johnson, | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge upon Defendant's Motion to Suppress Statements, Admissions and Answers, [Docket No. 15], and his Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 16]. The case has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on February 14, 2013, and received additional briefing by the parties on the suppression motions.[1] For reasons outlined below, the Court recommends the motions be DENIED.

I. BACKGROUND

Gordon Dean Johnson (Defendant) is charged with a single count of involuntary manslaughter, in violation of 18 U.S.C. §§ 1112(a), 1112(b), and 1153(a).[2] (Indictment [Docket No. 1]). Authorities allege that, on or about August 19, 2012, Defendant struck and killed a pedestrian, Kaishauna Sky Thunder (Ms. Thunder), by operating his vehicle in a reckless manner while under the influence of alcohol. (Id.).

---

[1] Defendant also made various discovery motions which were the subject of a separate Order. [Docket No. 26].
[2] The Indian Major Crimes Act, 18 U.S.C. § 1153, provides federal jurisdiction of manslaughter of an Indian victim within Indian country. The Government alleges that both Defendant and Ms. Thunder are Indians, and that Ms. Thunder was killed within the borders of the Red Lake Indian Reservation. (Indictment [Docket No. 1]).

## II.     FACTS[3]

Early in the morning of August 19, 2012, Defendant telephoned the Red Lake Police Department (RLPD) on the Red Lake Indian Reservation to report that he had struck a pedestrian with his vehicle. (Tr. at 9:20-22; 14:4-6). At approximately 3:20 a.m., RLPD dispatched Sergeant Harlan Joseph Johnson (Sgt. Johnson)[4] to the accident scene. (Tr. at 9:14-20; 10:3-4). Upon arriving at the scene, Sgt. Johnson found a deceased female lying in the road. (Tr. at 10:17-19). Defendant's vehicle was visible parked about a quarter-mile down the road, and Sgt. Johnson directed RLPD Officer Keary Thomas Petschl (Officer Petschl) to secure the vehicle. (Tr. at 11:14-16, 19-20; 19:18-23).

When he reached the Defendant's vehicle, Officer Petschl found the driver's-side door was open. (Tr. at 20:12). There was damage to the vehicle around the passenger-side headlight, and damage to the windshield. (Tr. at 20:12-15). An open beer can was visible inside the vehicle on the center console. (Tr. at 20:23-24; 28-14-20). As Officer Petschl was photographing the vehicle, Defendant approached on foot, and asked Officer Petschl whether the person he had hit was OK. (Tr. at 21:13-14, 17-18). Officer Petschl did not give Defendant a Miranda[5] warning; he did, however, ask Defendant if he had been drinking. (Tr. at 23:9-10; 29:10-12). Defendant replied that he had had a couple of beers. (Id.). Officer Petschl asked Defendant if he would consent to a preliminary breath test (PBT), and Defendant consented, with the PBT indicating a blood-alcohol content (BAC) of 0.078 percent. (Tr. at 23:11-19).

Officer Petschl asked Defendant to sit in his patrol car, and Defendant complied. (Tr. at 23:23-25; 30:9-15). Officer Petschl left the patrol car's door open so that Defendant could move

---

[3] The facts in this section are drawn from the testimony of Red Lake Police Department Sergeant Harlan Joseph Johnson, Officer Keary Thomas Petschl, and Officer Ron Leyba at the February 14, 2013, hearing. A transcript of that hearing is in the record. ([Docket No. 28] (in citation, "Tr.")).
[4] No relation to Defendant. (Tr. At 9:9-10).
[5] Miranda v. Arizona, 384 U.S. 436, 444 (1966).

2

about, and advised Defendant that he was not under arrest. (Tr. at 23:23-25; 24:1-4, 11-16; 32:12-14). In fact, Officer Petschl did not arrest Defendant. (Tr. at 26:1-2). However, Officer Petschl did not specifically advise Defendant that he was free to leave, and he testified that subjectively he did not want Defendant to leave and would have pursued Defendant if he had tried to leave. (Tr. at 30:24-25; 31:8-14). Instead, at the request of Sgt. Johnson, Officer Petschl kept watch over Defendant until RLPD Officer Sumner[6] arrived to take Defendant to the Indian Health Services hospital (hereinafter, the "IHS hospital"). (Tr. at 31:18-25).

Officer Petschl testified that he was in uniform during his encounter with the Defendant. He also was wearing a full duty belt including a sidearm and handcuffs, but he did not take out either his weapon or his cuffs. (Tr. 22:20-25—23:1-4). He did not yell at Defendant, and he felt no need to restrain Defendant because Defendant was cooperative throughout their encounter. (Tr. at 25:1-4, 8-10; 26:12-13, 16-17; 32:15-18). He also testified that Defendant did not appear to be intoxicated, did not slur his speech, appeared to understand Officer Petschl's questions, and provided answers that Officer Petschl could understand. (Tr. at 25:11-19; 26:7-11, 18-21).

RLPD Officer Ron Leyba (Officer Leyba) was directed by Sgt. Johnson to go to the IHS hospital and, if possible, to obtain blood and urine samples and a statement from Defendant. (Tr. at 34:10-16). Officer Leyba arrived at the IHS hospital, where he found Defendant in a patient room, not handcuffed or otherwise restrained. (Tr. at 35:16-23). He proceeded to advise Defendant of his <u>Miranda</u> rights. (Tr. at 36:1-6).[7] Defendant said that he understood his rights,

---

[6] None of the witnesses at the February 14, 2013, hearing provided Officer Sumner's first name. (<u>See generally</u> Tr.).
[7] Officer Leyba testified that he did not read the <u>Miranda</u> warning to Defendant from a prepared text, but instead he recited it from memory. (Tr. at 42:1-3). During the February 14, 2013, hearing, Officer Leyba testified again from memory as to the <u>Miranda</u> warning that he gave Defendant. He testified twice as to the content of the <u>Miranda</u> warning that he gave Defendant. His first recitation consisted of the following:
   You have the right to remain silent. Anything you say can and will be used against you in a court of law. If you cannot afford an attorney, one will be appointed for you. Do you understand your rights – each of these rights as I read them to you?
(Tr. at 36:6-13). His second recitation consisted of the following:

3

and that he just wanted to explain what had happened. (Tr. at 36:1-4, 17-18; 37:17-25). Officer Leyba also explained that he would like to take blood and urine samples, and he and IHS hospital staff explained a medical waiver form that they provided to Defendant. (Tr. at 38:16-20). Defendant consented to providing blood and urine samples, saying that he would do "anything I can to help," and IHS hospital staff proceeded to take the samples. (Tr. at 38:23-24; 39:9-17). After the blood and urine samples were taken and Defendant provided a statement, Officer Leyba, acting on the orders of Sgt. Johnson, arrested Defendant. (Tr. at 39:19-25).

Officer Leyba testified that he was in uniform, wearing his sidearm and handcuffs, but that he never drew his weapon, and that he did not remove his handcuffs until he made the arrest. (Tr. at 34:23-25—35:1-7). During the encounter, Officer Sumner also was present, and IHS hospital staff at times were present as well. (Tr. at 38:3-4, 16-20). Officer Leyba testified that he did not yell at Defendant, and described Defendant as very cooperative. (Tr. at 38:7, 12-13). He also testified that he believed Defendant to be competent to waive his <u>Miranda</u> rights. (Tr. at 40:23-25; 41:16-25). Officer Leyba described Defendant as appearing "nervous." (Tr. at 36:21-25). However, he said the he observed no signs that Defendant was injured or intoxicated, and

---

    You have the right to remain silent. Anything you say can and will be used against you in a court of law. If you cannot afford an attorney, one will be appointed for you. If you cannot afford an attorney, one will be appointed for you. Do you understand these rights as I read them to you?
(Tr. at 42:6-16).

  The Court recognizes that this warning, as recalled and recited by Officer Leyba, does not precisely detail the full spectrum of the advisory suggested in <u>Miranda</u>. However, Defendant does not argue that any waiver of his Fifth Amendment or Sixth Amendment rights was not done knowingly because he did not receive a proper <u>Miranda</u> warning, but instead, he argues only that he did not voluntarily consent to questioning pursuant to the <u>Miranda</u> warning that he did receive. (Def.'s Mem. Supp. Mots. Suppress [Docket No. 32], at 7).

  Moreover, "[t]he Supreme Court 'has never indicated that the 'rigidity' of <u>Miranda</u> extends to the precise formulation of the warnings given to a criminal defendant.'" <u>United States v. Caldwell</u>, 954 F.2d 496, 501 (8th Cir. 1992) (quoting <u>California v. Prysock</u>, 453 U.S. 355, 359 (1981) (per curiam)). In fact, beginning with <u>Rhode Island v. Innis</u>, 446 U.S. 291 (1980), the U.S. Supreme Court has, on multiple occasions, referred to "<u>Miranda</u> warnings . . . or their equivalent." <u>See, e.g.</u>, <u>Id.</u> at 297; <u>Prysock</u>, 453 U.S. at 360 (quoting <u>Innis</u>); <u>Duckworth v. Egan</u>, 492 U.S. 195, 202 (1989) (quoting <u>Innis</u>); <u>Florida v. Powell</u>, 559 U.S. 50, __, 130 S. Ct. 1195, 1204 (2010) (quoting <u>Innis</u>) (pagination in U.S. Reporter not yet available). Consequently, for purposes of the present case, the Court considers the <u>Miranda</u> warning provided by Officer Leyba to be adequate, and it will hereafter consider only Defendant's argument that he did not voluntarily consent to questioning.

4

stated that Defendant did not slur his speech and appeared to understand the questions that were asked. (Tr. at 37:1-12; 40:19-25).

## III. DISCUSSION

### A. Motion to Suppress Statements, Admissions and Answers

Defendant seeks to suppress his statements made to Officer Petschl along the roadside near the accident site, arguing that he was in custody and was not advised of his Miranda rights. Defendant also seeks to suppress his statements made to Officer Leyba at the IHS hospital, arguing that any waiver of his Miranda rights was not voluntary. (See generally Def.'s Mem. Supp. Mots. Suppress [Docket No. 32]).[8]

#### 1. Statements to Officer Petschl

##### a. Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). However, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda

---

[8] Initially, Defendant also sought to suppress statements made to Officer Sumner. However, Defendant withdrew that part of his motion in reliance on the Government's representation at the February 14, 2013, hearing that it did not intend to call Officer Sumner to testify in its case-in-chief for any purpose. (Tr. at 7:1-8).

5

warnings are required only where there has been such a restriction on a person' freedom as to render him in custody." Id.

The Eighth Circuit considers six (6) factors when determining whether a suspect is in custody:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (citing United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." United States v. Axsom, 289 F.3d 496, 500-01 (8th Cir. 2002). Moreover, those factors are not exclusive; "[t]he analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview.'" Sanchez, 676 F.3d at 630-31 (citing United States v. Aldridge, 664 F.3d 705, 711 (8th Cir. 2011)). The ultimate determination is based on the totality of the circumstances, with none of the above factors being dispositive, and a particularly strong showing on one factor may compensate for a deficiency on another factor. Griffin, 922 F.2d at 1347. The key inquiry is whether there was a formal arrest or restraing of a defendant's movement to the degree associated with a formal arrest. Stansbury, 511 U.S. at 322. "In answering this question, we look at the totality of circumstances while keeping in mind that the determination is based 'on

the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (quoting Stansbury, 511 U.S. at 322-23, cert. denied LeBrun v. United States, 543 U.S. 1145 (2005)).

### b. Analysis

Based on the facts of the present case, the totality of the circumstances indicates that Defendant was not in custody in the early morning hours of August 19, 2012, when he made oral statements to Officer Petschl.

The first factor mitigates against a finding of custody. Officer Petschl advised Defendant that he was not under arrest. However, because Officer Petschl never expressly told Defendant that he could terminate questioning or that he was free to leave, this factor moves the needle only slightly. "The first Griffin factor weighs heavily in favor of noncustody when the officers clearly inform a suspect that [he] is free to leave or decline questioning. However, when officers inform a suspect only that [he] is not under arrest, the first factor is less determinative in favor of noncustody, and our analysis relies more on the other indicia of custody." Sanchez, 676 F.3d at 631 (citations omitted); see also United States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006) (telling defendant that he is not under arrest without advising him that he may termination questioning, "while falling short of an ideal, do[es] weigh against a determination that he was in custody").

The Court gives greater weight to the third factor, as the facts in this case clearly demonstrate that Defendant voluntarily acquiesced to questioning. Defendant, himself, phoned law enforcement to notify them that he had hit a pedestrian. Additionally, when Officer Petschl arrived and began photographing Defendant's vehicle, it was Defendant who approached Officer

Petschl and initiated conversation by spontaneously asking whether the person he had hit was OK. Additionally, Defendant was cooperative, and he also consented to a request to administer a PBR.

Of the three potentially mitigating factors, only the second can be said to somewhat fall short of mitigating against a finding of custody in this case. Defendant was never told specifically that he was free to move about or leave. However, Defendant did not try to leave. Consequently, the Eighth Circuit has held that this factor is "unclear" where a defendant makes no attempt to leave. Sanchez, 676 F.3d at 631 (where defendant did not attempt to leave, second factor is unclear because "it is unclear what would have happened if she had"); see also Ollie, 442 F.3d at 1138 (where defendant "never tried to move about or leave . . . it is impossible to determine if [he] retained his freedom of movement"). In the present case, Officer Petschl testified that subjectively he would have pursued if Defendant had tried to leave. Thus, while the Court could find that Defendant did not in fact have unrestrained freedom of movement once he was asked to sit in Officer Petschl's vehicle with the door open, because Officer Petschl's subjective intent to detain Defendant if he should try to leave was never communicated to Defendant either by word or action, whereas here, there is a particularly strong showing that Defendant voluntarily initiated and acquiesced to questioning, it compensates for Officer Petschl's subjective readiness to deny Defendant full freedom of movement during the interview. See Griffin, 922 F.2d at 1347; cf. LeBrun, 363 F.3d at 720.

Furthermore, none of the three aggravating factors weigh in favor of a finding of custody. The fourth factor does not weigh in favor of custody, because there is no evidence that investigators engaged in strong-arm tactics or deceptive stratagems. Defendant notes that Officer Petschl was armed and in uniform. (Def.'s Mem. Supp. Mots. Suppress [Docket No. 32],

8

at 5-6). However, Officer Petschl testified that he never drew his weapon. Axsom, 289 F.3d at 502 (no strong-arm tactics where "agents did not adopt a threatening posture toward Axsom, display their weapons, or make a physical show of force during the questioning"). Officer Petschl testified that he did not yell at or threaten Defendant. See United States v. Brown, 990 F.2d 397, 400 (8th Cir. 1993) (finding no strong-arm tactics where investigators "did not yell at [defendant], [or] threaten him"). Officer Petschl did not use any deceptive stratagems, such as the good-cop, bad-cop routine. See Id.; United States v. Carter, 844 F.2d 368, 372 (8th Cir. 1989) ("Mutt and Jeff" technique contributed to police-dominated atmosphere (citing Miranda, 384 U.S. at 452, 455)). Officer Petschl "asked straightforward questions and [Defendant] gave straightforward answers," Axsom, 289 F.3d at 502 (internal quotations omitted), and he did not make any promises to Defendant. Thus, the fourth factor does not aggravate in favor of a finding of custody.

Nor does the fifth factor weigh in favor of a finding of custody, because the interview was not police dominated. In considering this factor, courts examine such considerations as the place and length of the interview. Griffin, 922 F.2d at 1352. Defendant suggests that being asked to sit inside Officer Petschl's squad car constituted his being placed in a police-dominated environment. (Def.'s Mem. Supp. Mots. Suppress [Docket No. 32], at 6). It is unclear from Officer Petschl's testimony whether he continued to ask, and Defendant continued to answer, questions after he asked Defendant to sit in his squad car. However, even if the interview did continue, the fact alone that Defendant was sitting in a police squad car is not per se evidence that the interview was police dominated. The Eighth Circuit, in an unpublished case, found that the environment was not police dominated where a defendant was being transported inside an Iowa State Patrol trooper's squad car. United States v. Hephner, 103 Fed. Appx. 41, 44, 48-49

9

(8th Cir. 2004). In both Hephner and the present case, the defendants were not handcuffed as they sat in the police vehicles. (See Tr. at 22:24-25—23:1-4; Hephner, 103 Fed. Appx. at 44). In the present case, the environment was even less police dominated than in Hephner, as the squad car door was left open and Defendant was not transported from the scene where he initiated contact with the police. In contrast, in Hephner the defendant was in a closed vehicle and had been transported some fifteen miles away from where the initial traffic stop had occurred. Hephner, 103 Fed. Appx. at 44. Nor is there any evidence that the interview was so lengthy as to be police-dominated. Thus, the fifth factor does not aggravate in favor of a finding of custody.

The sixth and final factor is the easiest to resolve: Defendant *was not arrested* at the conclusion of his interaction with Officer Petschl, and therefore, this factor does not aggravate in favor of a finding of custody.

Upon the totality of the circumstances, the Court finds that Defendant was not in custody when he spoke with Officer Petschl on the morning of August 19, 2012. A reasonable person in Defendant's position would not "have felt that he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995). Moreover, the Defendant's freedom was not restrained to a degree associated with formal arrest requiring a Miranda warning. Finally, the circumstances of the interview were not so police dominated as to subvert the Defendant's free will to voluntarily respond to questions.

Consequently, the Court recommends that the Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 15] be DENIED as it relates to statements made by Defendant to Officer Petschl.

## 2. Statements to Officer Leyba

### a. Standard of Review

A defendant's waiver of his <u>Miranda</u> rights must be made voluntarily, knowingly,[9] and intelligently. <u>Miranda</u>, 384 U.S. at 444. When determining whether a waiver was made voluntarily, knowingly, and intelligently, the court must inquire whether:

> First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

<u>United States v. Vinton</u>, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted) (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)). "The government has the burden of proving the validity of the <u>Miranda</u> waiver by a preponderance of the evidence." <u>United States v. Haggard</u>, 368 F.3d 1020, 1024 (8th Cir. 2004).

The Court "must examine both 'the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess.'" <u>United States v. Syslo</u>, 530 F.3d 860, 866 (8th Cir. 2002) (quoting <u>United States v. McClinton</u>, 982 F.2d 278, 282 (8th Cir. 1992)). The United States Supreme Court has explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary.'" <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was *involunvary* and not as bearing on the separate question of whether the waiver was knowing and intelligent." <u>United States v. Turner</u>, 157 F.3d 552, 555 (8th Cir. 1998) (quoting <u>United States v. Bradshaw</u>, 935 F.2d 295, 299 (D.C. Cir. 1991)) (emphasis in <u>Bradshaw</u>).

---

[9] <u>See</u> fn.7, <u>supra</u>.

In determining whether a waiver was voluntary, knowing, and intelligently made, a court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." Syslo, 303 F.3d at 866. "[A]lcohol use . . . [is] relevant to our analysis, but 'intoxication . . . do[es] not automatically render a confession involuntary.'" United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008) (quoting United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990)); see also Turner, 157 F.3d at 555 (refusing to adopt a per se rule for intoxication and finding that the defendant's confession was voluntary even though the defendant was intoxicated by PCP and later exhibited "bizarre" behavior and signs of mental illness). "[T]he test is whether these mental impairments caused the defendant's will to be overborne." Casal, 915 F.2d at 1229.

b. **Statements to Officer Leyba**

Defendant states only that he "rests on the record as [to] the voluntariness of the Miranda waiver." (Def.'s Mem. Supp. Mots. Suppress [Docket No. 32], at 7). Based on the facts of the present case, the totality of the circumstances indicates that Defendant voluntarily, knowingly, and intelligently waived his right to remain silent and to have an attorney present during questioning on the morning of August 19, 2012, when he made oral statements to Officer Leyba while at the IHS hospital.

The record contains no evidence that Defendant's waiver of his Miranda rights was involuntary. There is no evidence of coercion. On the contrary, the evidence shows that Officer Leyba did not raise his voice to or threaten Defendant, and that Defendant was cooperative and offered to do "anything I can do to help."

Nor does the fact that Defendant had earlier consumed "a couple beers" necessitate a finding that his waiver was not voluntary. Courts have routinely found that the mere fact that a

defendant consumed alcohol and/or drugs does not render his waiver involuntary, particularly where there is evidence that the defendant did not appear to be intoxicated.[10] In the present case, both Officer Petschl and Officer Leyba testified that they saw no signs that Defendant was intoxicated, and that Defendant appeared to understand and responded appropriately to the questions that they asked of him.

Upon the totality of the circumstances, the Court finds that Defendant voluntarily waived his right to remain silent and to have an attorney present during questioning by Officer Leyba at the IHS hospital on the morning of August 19, 2012. There is no evidence of coercion, or that Defendant's will was overborne. In fact, the evidence demonstrates that he was entirely cooperative and stated his desire to explain what happened. Nor does the evidence of Defendant's earlier alcohol consumption necessitate a finding that his statements were involuntary.

Consequently, the Court recommends that the Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 15] be DENIED as it relates to statements made by Defendant to Officer Leyba.

---

[10] In Gaddy, the defendant claimed he had not slept the night before his arrest and had taken two or three shots of gin, two pain relievers, 1600 milligrams of muscle relaxers and smoked a blunt of mixed marijuana and cocaine. Gaddy, 532 F.3d at 786. In rejecting the defendant's argument that his confession was involuntary, the court relied in part on testimony that the defendant appeared aware and coherent and that he "did not tell them that he was tired, intoxicated or under the influence of drugs." Id. at 788-89.

In Casal, the defendant had used methamphetamine the evening of his interrogation and had not slept in five days. Casal, 915 F.2d at 1227. Nonetheless, the court rejected the defendant's argument that his statements were involuntary because of his recent drug use and lack of sleep, finding in part that there "was evidence that [the defendant] did not act like an intoxicated person." Id. at 1229.

In United States v. Contreras, 372 F.3d 974 (8th Cir. 2004), the defendant informed the interviewing police officers, and a separate witness testified at the suppression hearing, that he had "used methamphetamine the night before . . . and had used marijuana the day of [his arrest and interview]." Id. at 977. In rejecting the defendant's arguments that his consent to the search of his home and the statement that he made were involuntary, the court relied on testimony from the officers that the defendant "appeared to be sober and in control of his faculties at the time he consent[ed]" and that substantial evidence showed that he "was lucid at the time he gave consent and that he understood the questions asked of him." Id. at 977-78.

**B. Motion to Suppress Evidence Obtained as a Result of Search and Seizure**

    **1. Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "There can be no serious question that the taking of a blood sample, so as to determine its alcohol content, is subject to the proscriptions of the Fourth Amendment." United States v. Dow, Crim. No. 10-65 (MJD/RLE), 2010 U.S. Dist. LEXIS 65375, at *13 (D. Minn. June 11, 2010) (Erickson, C.M.J.), adopted by 2010 U.S. Dist. Lexis 65376 (D. Minn. June 30, 2010) (Davis, C.J.). The U.S. Supreme Court has:

> long recognized that a "compelled intrusio[n] into the body for blood to be analyzed for alcohol content" must be deemed a Fourth Amendment search. In light of our society's concern for the security of one's person, it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable.

Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989).[11] Thus, "[s]earch warrants are ordinarily required . . . where intrusions into the human body are concerned." Schmerber v. Califormia, 384 U.S. 757, 770 (1966).

However, "'[a]n officer with consent needs neither a warrant nor probable cause to conduct a constitutional search.'" United States v. Pennington, 287 F.3d 739, 746 (8th Cir. 2002). "Whether or not the consent was voluntary must be established by examining the totality of the circumstances, including both the characteristics of the accused and the details of the interrogation." United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000) (quotations and citations omitted). In the Eighth Circuit:

> We consider the following characteristics of the individual to determine whether their consent was truly voluntary: age, intelligence, intoxication, advice of

---

[11] Similarly, the Eighth Circuit has held that "urinalysis is a search and seizure within the meaning of the [F]ourth [A]mendment." McDonnell v. Hunter, 809 F.2d 1302, 1307 (1987).

> Miranda rights, and previous arrests. We also consider the following characteristics of the environment in which the individual's consent was given, so as to determine whether their consent was truly voluntary: length of detention, threats and misrepresentations by police, whether the individual is in custody or under arrest, whether it is a public or private place, and the suspect's contemporaneous objections and representations.

United States v. Reinholz, 245 F.3d 765, 780 (8th Cir. 2001) (citations omitted), cert. denied 534 U.S. 896 (2001).

"Ultimately, '[c]onsent is voluntary if it was 'the product of an essentially free and unconstrained choice by its maker,' . . . rather than the 'product of duress or coercion, express or implied.'" Dow, 2010 U.S. Dist. LEXIS 65375, at *19 (quoting Bradley, 234 F.3d at 226 (quotations and citations omitted)). "[T]he question of whether a consent to search was in fact 'voluntary' or was the product of duress or coercion . . . is a question of fact to be determined from the totality of all circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973); see also United States v. Fleck, 413 F.3d 883, 891-92 (8th Cir. 2005). "The Government has the burden to show, by a preponderance of the evidence, that a defendant's consent was voluntary." Dow, 2010 U.S. Dist. LEXIS 65375, at *20 (citing United States v. Esquivias, 416 F.3d 696, 700 (8th Cir. 2005)).

**2. Analysis**

Here, Defendant again merely "rests on the record as [to] the voluntariness of the Medical Waiver that was used to obtain a urine and blood sample." (Def.'s Mem. Supp. Mots. Suppress [Docket No. 32], at 7). Based on the facts of the present case, the totality of the circumstances indicates that Defendant voluntarily consented to provide blood and urine samples at the IHS hospital on the morning of August 19, 2012.

With regard to the various characteristics (as outlined above) of the Defendant to be considered, the Court finds that none of them indicate in the present case that Defendant's

15

consent was involuntary.  Like the defendant in Dow, the Defendant here "is a mature individual, who does not suggest, let alone competently support, that he has any difficulty in speaking and understanding English, or that his intelligence rendered him incapable of providing consent." Dow, 2010 U.S. Dist. LEXIS 65375, at *20-21.  As previously noted, Defendant's earlier consumption of "a couple beers" is itself insufficient to support a finding of intoxication where both Officer Petschal and Officer Leyba reported no visible signs that Defendant was intoxicated.  See Part III.A.2.b, supra.  Defendant was also advised of his Miranda rights prior to being asked for his consent to provide blood and urine samples.  None of these factors[12] provide any support for Defendant's contention that his consent was not voluntary.

With regard to the characteristics of the environment, the Court likewise finds that none of these factors suggest that Defendant's consent was involuntary.  The Record does not indicate how long Defendant was at the IHS hospital before he consented to provide blood and urine samples, but there is no evidence to suggest that he was there so long as to be coercive.  Nor does the location suggest duress, as Defendant was in a public hospital and had communications concerning the blood and urine samples not just with Officer Leyba but also with hospital staff.  Officer Leyba did not raise his voice or threaten Defendant, and there is no evidence that Defendant objected or resisted providing blood or urine samples.  See Dow, 2010 U.S. Dist. LEXIS 65375, at *24-26 (defendant's lack of contemporaneous objection supports finding that consent was voluntary (collecting cases)).  Like the defendant in Dow, in the present case Defendant "fully cooperated"—even going so far as to state his desire to help in any way—with the efforts to collect the necessary samples.  Dow, 2010 U.S. Dist. LEXIS 65375, at *25.

---

[12] The fifth factor concerns prior arrests.  However, as in Dow, "[t]he Record does not indicate whether the Defendant has had any past experience with the criminal justice system, and accordingly, that factor of the analysis has had no bearing on our analysis."  Dow, 2010 U.S. Dist. LEXIS 65375, at *22 n.5.

16

Considering both the characteristics of the Defendant, and the characteristics of the environment in which Defendant consented, the totality of circumstances indicates that Defendant voluntarily consented to provide blood and urine samples at the IHS hospital on the morning of August 19, 2012.[13]

Consequently, the Court recommends that the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 16] be DENIED.

IV.  **CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 15] be **DENIED**.

2. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 16] be **DENIED**.

Dated: March 7, 2013                                    /s/ Leo I. Brisbois_____
                                                        LEO I. BRISBOIS
                                                        United States Magistrate Judge

---

[13] Even if Defendant's consent was not voluntary, "'[a] warrantless search is reasonable when justified by both probable cause and exigent circumstances.'" United States v. Walsh, 299 F.3d 729, 733 (8th Cir. 2002) (quoting United States v. Parris, 17 F.3d 227, 229 (8th Cir. 1994)). Here, the collection of blood and urine samples were supported by both probable cause and exigent circumstances.

Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances" demonstrates "a fair probability that . . . evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Solomon, 432 F. 3d 824, 827 (8th Cir. 2005) (same). In the present case, (1) Defendant reported that he hit a pedestrian with his vehicle; (2) Defendant and his vehicle were found near the place where he said the accident took place, and the body of a deceased person lies in the roadway nearby; (3) Defendant's vehicle shows damage to the headlights and windshield, and an open container of beer is visible inside; and (4) Defendant admits to having consumed "a couple beers." There can be no doubt that police had probable cause that evidence of a crime could be found by searching for alcohol in Defendant's blood and/or urine.

Additionally, "[e]xigent circumstances exist when there is a risk of destruction of evidence, including a risk that a defendant's blood-alcohol content will dissipate because 'the body functions to eliminate [alcohol] from the system.'" United States v. Eagle, 498 F.3d 885, 892 (8th Cir. 2007) (quoting Schmerber, 384 U.S. at 770-71).

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 21, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.